## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **BRANDI MELISSA LITTLE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 1:17-cv-01602-MHH** |
| | } | |
| **NANCY BERRYHILL,** | } | |
| **Acting Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g), plaintiff Brandi Melissa Little seeks judicial review of a final adverse decision by the Commissioner of Social Security. The Commissioner denied Ms. Little's claims for a period of disability and disability insurance benefits. After careful review, the Court remands the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Little applied for a period of disability and disability insurance benefits. (Doc. 5-3, p. 12; Doc. 5-4, p. 2). Ms. Little alleges that her disability began December 1, 2009. (Doc. 5-3, p. 12; Doc. 5-4, p. 2). The Commissioner initially denied Ms. Little's claim. (Doc. 5-3, p. 12; Doc. 5-4, p. 2). Ms. Little requested a

hearing before an Administrative Law Judge (ALJ). (Doc. 5-3, pp. 3, 12). The hearing took place on January 7, 2013. (Doc. 5-3, pp. 12, 31). The ALJ issued an unfavorable decision on March 6, 2013. (Doc. 5-3, p. 26). The Appeals Council declined Ms. Little's request for review (Doc. 5-3, pp. 9-11), making the Commissioner's decision final for appellate review. *See* 42 U.S.C. § 405(g).

Ms. Little filed an action for judicial review. *Little v. Colvin*, No. 1:13-CV-1475-SLB, 2015 WL 1345432, at *1 (N.D. Ala. Mar. 23, 2015) (*Little I*). The *Little I* court remanded the case to the Commissioner because the ALJ did not address Ms. Little's "70% service connected disability [VA] rating . . . noted throughout her medical records" or the compensation and pension exam (C & P exam) for post-traumatic stress disorder (PTSD) administered by Dr. Clark. *Little I*, 2015 WL 1345432, at *6.

The ALJ held another hearing and issued an unfavorable decision on July 20, 2016. (Doc. 5-11, pp. 60-61). The Appeals Council declined Ms. Little's request for review. (Doc. 5-3, pp. 9-11). Ms. Little appealed the Commissioner's final decision to this Court. *See* 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close

scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ.  *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).  If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("The Secretary's failure to apply the correct law

or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.").

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Little meets the insured status requirements through June 30, 2012. (Doc. 5-11, p. 13). Ms. Little has not engaged in substantial gainful activity since December 1, 2009, the alleged onset date. (Doc. 5-11, p. 14). The ALJ determined that Ms. Little suffers from three severe impairments: PTSD with agoraphobia, depression, and mild traumatic brain injury. (Doc. 5-11 p. 14). Based on his review of the medical evidence, the ALJ concluded that Ms. Little does not have an impairment or a combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 5-11, p. 14).

4

In light of Ms. Little's impairments, the ALJ evaluated her residual functional capacity. The ALJ determined that Ms. Little has the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple tasks with a gradual introduction of new task assignments. She can maintain attention, concentration and pace to acceptably perform simple tasks for two-hour increments throughout the workday. She must not be assigned job duties to have direct interaction with the public and coworkers, except she can have occasional contact with her supervisors. She must be assigned no tandem tasks with coworkers (i.e., she must be able to complete her assigned responsibilities without having to work in tandem with coworkers.)

(Doc. 5-11, p. 16). Based on this RFC and vocational expert testimony, the ALJ concluded that Ms. Little is able to perform her past relevant work as a production assembler. (Doc. 5-11, p. 27). Relying on the Medical-Vocational Guidelines and expert testimony, the ALJ alternatively found that Ms. Little is capable of doing other jobs including hand packager, housekeeper, and production line solderer. (Doc. 5-11, p. 29). Accordingly, the ALJ determined that, through the date last insured, Ms. Little had not been under a disability within the meaning of the Social Security Act. (Doc. 5-11, p. 29).

## IV.   ANALYSIS

Ms. Little argues that the ALJ provided inadequate reasons for discounting the opinion of her treating psychiatrist, Dr. Huggins, and her 70% VA disability rating for PTSD. (Doc. 7). This opinion addresses the ALJ's analysis of Ms.

Little's VA disability rating and then discusses the ALJ's treatment of the medical evidence from the VA.

Ms. Little is a Gulf War army veteran. (Doc. 5-8, p. 8; Doc. 5-14, p. 11). She served in the Army from February 2001 through April 2004. (Doc. 5-14, p. 11). During her 2003 deployment, Ms. Little experienced two IED (improvised explosive device) blasts. (Doc. 5-8, p. 8). Ms. Little was in a truck that was less than ten feet away from the IEDs when they exploded. (Doc. 5-8, p. 8).

Ms. Little saw the first IED explode and experienced ringing in her ears. (Doc. 5-8, p. 9). Ms. Little "closed her eyes and felt the [second] blast." (Doc. 5-8, p. 9). Ms. Little remembers opening her eyes and realizing that "she needed to get out of the kill zone[.]" (Doc. 5-8, p. 9). Ms. Little left the area and "[found] her way back to the airport." (Doc. 5-8, p. 9).

Ms. Little discovered an unconscious passenger in the truck. (Doc. 5-8, p. 9). Ms. Little attempted to help the passenger by talking to him. (Doc. 5-8, p. 9). After arriving at the airport, the "passenger was medivac[k]ed." (Doc. 5-8, p. 9). Ms. Little did not receive medical attention or an evaluation immediately after the event. (Doc. 5-8, p. 9).

When Ms. Little "started refusing mission trips with unknown teams[,]" she received a recommendation for therapy. (Doc. 5-8, p. 9). Ms. Little believed that "she had been left during the [IEDs] incident[.]" (Doc. 5-8, p. 9). Ms. Little

"cannot account for details" that other soldiers in her battalion have shared about the IEDs incident, including a fire fight. (Doc. 5-8, p. 9). Ms. Little also learned later that their lieutenant waited for and did not abandon her. (Doc. 5-8, p. 9).

Dr. Huggins, a treating psychiatrist with the VA, diagnosed Ms. Little with chronic PTSD in August 2005. (Doc. 5-8, p. 9; Doc. 5-10, p. 26). Consult requests indicate that Ms. Little had a 70% service-connected disability rating attributable to PTSD by April 2012, if not earlier. (Doc. 5-8, pp. 3-4, 7).[1]

Under the VA disability system, a veteran who cannot work "because of a disability related to . . . service in the military (a service-connected disability), . . . may qualify for what's called 'individual unemployability.' This means [the veteran] may be able to get disability compensation or benefits at the same level as a [v]eteran who has a 100% disability rating."[2] To qualify, a veteran must "have at least 1 service connected disability rated at 60% or more disabling . . ." and be

---

[1] Effective February 13, 2012, Ms. Little had an overall disability rating of 80%, constituting a combined rating of all of Ms. Little's conditions. (Doc. 5-14, pp. 9-10). The rating was based in part on VA treatment records from December 2004 through July 2013. (Doc. 5-14, p. 12). The VA stated that it "continued" Ms. Little's 70% PTSD disability rating (Doc. 5-14, p. 13), indicating that the rating pre-dated February 2012. A record created for purposes of Ms. Little's application for a review of her unemployability benefits suggests that she had a 70% PTSD disability rating as of November 2007. (Doc. 5-9, pp. 65-66).

[2] *See* https://www.va.gov/disability/eligibility/special-claims/unemployability/ (last visited on Mar. 5, 2019).

unable to "hold down a steady job that supports [the veteran] financially (known as substantially gainful employment) because of [the] service-connected disability."[3]

The April 2012 consult requests that reflect Ms. Little's 70% disability rating seem to relate to her February 2012 application for an increase in her service-connected compensation. (Doc. 5-14, p. 8). Dr. Clark, a clinical psychologist for the VA, completed a compensation and pension examination report for Ms. Little in June of 2012. (Doc. 5-9, pp. 61-72). As part of the process, Dr. Clark reviewed Ms. Little's VA records and identified Ms. Little's current service-connected PTSD rating of 70%. (Doc. 5-9, pp. 65-66). Dr. Clark gave Ms. Little a GAF score of 50. (Doc. 5-9, 69).[4]

Dr. Clark found that Ms. Little was unable to work due to PTSD even though Ms. Little's service-connected disability rating was less than 100%:

> Veteran has not been actively involved in MH treatment for a couple of years. It appears that she had the expectation that PTSD symptoms should have gone away from her prior treatment with time. She

---

[3] *Ibid.*

[4] GAF stands for "Global Assessment of Functioning," and the "GAF Scale" may be used to report an individual's "overall functioning." *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR), p. 32, American Psychiatric Association (4th ed. text revision, 2000). "The GAF Scale is to be rated with respect only to psychological, social, and occupational functioning. . . . [and] is divided into 10 ranges of functioning." DSM-IV-TR, p. 32. A GAF score of 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social occupational, or school functioning (e.g., no friends, unable to keep a job)." https://www.webmd.com/mental-health/gaf-scale-facts (last visited on Mar. 17, 2019). The fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), American Psychiatric Association (5th ed. 2013), no longer ruses the GAF Scale and includes instead a different global functioning measure – "the WHO Disability Assessment Schedule (WHODAS) ...." DSM-5, p. 16.

> appears to be frustrated that she continues to struggle with PTSD symptoms. She has recently returned back to MH treatment. Her PTSD symptoms may improve with continued participation in treatment.
>
> She is currently reporting moderately severe symptoms of PTSD and co-morbid depression. She is noting increasing anxiety when she leaves the house and will only leave when necessary. She is still able to complete activities of daily living. Veteran worked briefly since the time of the last exam in a clothing store but reports that she had difficulty being around others and quit the job. Veteran did not work for about 2-3 years. She recently applied for a job but had problems leaving the house to take a test that was part of the application process.
>
> Veteran's symptoms are causing moderate to severe impairments in occupational functioning. Veteran likely would have significant difficulty working in position that involved even minimal contact with other people. Furthermore, she likely would have problems tolerating a work environment that was noisy. She also would likely have difficulty tolerating a position that involved even mild to moderate levels of stress. She would likely have difficulty adapting to any changes in the workplace. Her problems with attention/concentration may also impact her ability to complete tasks correctly and efficiently.
>
> At this time, Veteran's symptoms likely make it difficult for her [to] obtain or maintain gainful employment. However, Veteran is not likely permanently unemployable. Veteran's symptoms may improve with continued participation in treatment and she may be able to be employed in the future. Recommend her employability status be re-evaluated in several years.

(Doc. 5-9, p. 63) (capitalization of text omitted).[5]

---

[5] Also in June of 2012, Dr. Summerlin, a consultative psychologist for the Social Security Administration, conducted a mental status examination of Ms. Little. He concluded "that Ms. Little does not have a psychological disorder which would cause her to be unemployable." (Doc. 5-8, p. 65). Dr. Summerlin gave Ms. Little a GAF of 60 consistent with "[m]orderate [e]motional [s]ymptoms [a]ffecting [p]ersonal, [s]ocial, and [o]ccupational [f]unctioning[.]" (Doc. 5-8, p. 65). Ms. Little "was generally calm and controlled until . . . the end of [the] session[;] [then she] became tearful . . . [and expressed] frustrations with her current life

In June of 2013, the VA asked Dr. Clark to review Ms. Little's file, stating:

> The veteran had a review PTSD exam on June 8, 2012. The examiner rendered an unemployability opinion due to PTSD; however the examiner noted they did not have the claim file. Also ask the examiner to confirm the previous individual unemployability opinion or provide a new opinion based on the review of the file. Another examination is not needed unless the examiner states otherwise.

(Doc. 5-18, p. 35). Dr. Clark reported:

> I have reviewed the c[laim] file. No changes to be made to the exam and medical opinion from 6/8/2012 after reviewing c[laim] file. Examiner continues to maintain the opinion that veteran is unemployable due to PTSD.

(Doc. 5-18, p. 35) (capitalization of text omitted).

In August of 2013, the VA issued a rating decision granting Ms. Little's application for a compensation increase. (Doc. 5-14, p. 11). The VA continued Ms. Little's service-connected PTSD disability rating of 70%. (Doc. 5-14, p. 11). The VA based this decision on:

> •Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood
>
> •Difficulty in adapting to stressful circumstances
>
> •The examiner's assessment of [Ms. Little's] current mental functioning, which is partially reflected in [the] Global Assessment of Function score [of 50] found below.

---

circumstances." (Doc. 5-8, p. 64). Although Dr. Summerlin indicated that he reviewed Ms. Little's VA post-traumatic stress disorder records, he did not discuss Ms. Little's service-connected disability rating of 70% in his report. (Doc. 5-8, pp. 65, 63-65).

•Difficulty in establishing and maintaining effective work and social relationships

•Difficulty in understanding complex commands

•Disturbances of motivation and mood

•Anxiety

•Chronic sleep impairment

•Mild memory loss

(Doc. 5-14, pp. 13-14).   The VA described the basis for its unemployabiliy decision as follows:

> Entitlement to individual employability is granted because the claimant is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities.   You last worked November of 2009 at a clothing store.   The VA examiner at the post traumatic stress disorder examination noted that you would have significant difficulty working in a position that involved minimal contact with other people.   Also noted was that you would have problems tolerating a work environment that was noisy, have difficulty tolerating a position that involved mild levels of stress, and you would have difficulties adapting to any changes in the workplace. The evidence of record shows that you [are] not capable of gainful employment.

(Doc. 5-14, p. 12).

The ALJ gave "little weight" to the VA's decision, including Ms. Little's service-connected disability rating of 70%:

> [The claimant] was granted a service-connected rating of 70% for post-traumatic stress syndrome, as well as unemployability effective February 13, 2012 (Exhibit 12D).  The VA relied, in part, upon the

evaluation and GAF assessment of 50 provided by Karen Clark, Ph.D., which the undersigned has discredited as being inconsistent with the overall evidence of record. The VA also supported its decision upon such things as claimant's difficulty in understanding "complex" commands and her "mild" memory loss (Exhibit 12D, pages 6-7). Under Social Security's program rules and regulations, such evidence would not necessarily preclude the claimant from performing mental demands of basic work activities. Eleventh Circuit case law states that a VA disability rating is certainly not binding on the Commissioner, but it is evidence that should be considered and is entitled to "great weight." *Rodriguez v. Schweiker*, 640 F.2d 682. However, while this is true in most cases, the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case. Since the regulations for disability status differ between the SSA and VA, administrative law judges need not give "great weight" to a VA disability determination if they adequately explain the valid reasons for not doing so. *Pearson v. Astrue*, 271 Fed. Appx. 979 (11th Cir. 2008); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Davis-Grimplin v. Astrue*, 2008 WL 4949115 (M.D. Fla.).

(Doc. 5-11, p. 27).

The Court finds an error in the ALJ's application of the law. In *Rodriguez v. Schweiker*, 640 F.2d 682 (5th Cir. 1981), a decision that is binding on this Court, the Court of Appeals held that although a VA disability rating is not binding on an ALJ, the rating "is entitled to great weight." 640 F.2d at 686.[6] The veteran in *Rodriguez* received an initial VA disability rating of 70% due to heart disease and a hand injury that impaired his grip strength. Mr. Rodriguez injured his hand while

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

serving the United States in the Vietnam War. *Rodriguez*, 640 F.2d at 684. Later, the VA increased the veteran's disability rating to 100%. *Rodriguez*, 640 F.2d at 684. After an administrative hearing and a review of the veteran's medical records, an ALJ denied the veteran's application for disability insurance benefits. In finding that the ALJ's decision was not supported by substantial evidence, the Court of Appeals held that the ALJ failed to give adequate weight to the veteran's VA disability rating:

> Although the ALJ mentioned the Veterans Administration disability rating on Rodriguez, he obviously refused to give it much weight. A VA rating is certainly not binding on the Secretary, but it is evidence that should be considered and is entitled to great weight. *Epps v. Harris*, 624 F.2d at 1274; *DePaepe v. Richardson*, 464 F.2d at 99. A VA rating of 100% disability should have been more closely scrutinized by the ALJ.

*Rodriguez*, 640 F.2d at 686.

As is evident from the *Rodriguez* decision, by 1981, the rule requiring an ALJ to give great weight to a VA rating was well-established. In *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972), another decision that is binding on this Court, the Fifth Circuit adopted the rule from a decision of the Third Circuit Court of Appeals. 464 F.2d at 101 (citing *Pulaski v. Finch*, 415 F.2d 613 (3d Cir. 1969)). In *Pulaski*, the Third Circuit Court of Appeals discussed in detail the records from the VA that the Secretary disregarded. The Third Circuit remanded that case for additional proceedings. 415 F.2d at 618. In adopting the rationale of *Pulaski*, the

Fifth Circuit Court of Appeals stated that when the evidence demonstrates that the claimant was injured in combat "in the military service of our Country," doubts concerning disability should be resolved in favor of the veteran. 464 F.2d at 101. Twenty years later, in a decision that is binding on this Court, the Eleventh Circuit rejected the ALJ's conclusion that the claimant did not have a severe impairment based, in part, on the claimant's VA disability rating of 100%, a rating which the Eleventh Circuit said should be given great weight. *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) (citing *Rodriguez*). The *Brady* decision does not indicate that Mr. Brady's severe physical and mental impairments were related to military service.

More recently, in opinions that are important to this court's analysis but non-binding, two panels of the Eleventh Circuit Court of Appeals affirmed decisions in which an ALJ denied an application for Social Security benefits from a veteran who had a 100% disability rating from the VA. Both decisions are based on records that are different from the records in *Brady* and *Rodriguez*. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 914 (11th Cir. 2015) ("Notably, this case is distinguishable from *Brady* and *Rodriguez*."); *Pearson v. Astrue*, 271 Fed. Appx. 979 (11th Cir. 2008).

In *Ostborg*, the claimant, a United States military veteran, had "suffered from scoliosis, flat feet, and a leg-length discrepancy for most of his life." 610

Fed. Appx. at 908. In addition, the claimant "suffered a head injury, when he slipped on ice and fell." 610 Fed. Appx. at 908. None of his alleged disabilities were combat-related. "The VA rated [the claimant's] disabilities as (1) 20% for degenerative-disc disease of the lumbar spine with dextroscoliosis, (2) 10% for his leg-length discrepancy, (3) 10% for degenerative-disc disease and osteoarthritis of the cervical spine, (4) 10% for degenerative changes of the thoracic spine, and (5) 10% for residuals from a concussion." 610 Fed. Appx. at 910. Nevertheless, the VA found that "'an extraschedular permanent and total disability rating [was] authorized,'" based on the claimant's "'level of disability and other factors, such as [his] age, education and occupational background.'" 610 Fed. Appx. at 910 (quoting VA records).[7] The ALJ who denied the veteran's application for benefits "found the VA's disability determination had 'little bearing' on Ostborg's claim for Social Security disability benefits, because the VA used a different standard to assess disability and may not have been aware of his hobbies and activities." 610 Fed. Appx. at 913.

---

[7] *See* 38 C.F.R. § 3.321 (b) ("The governing norm in the[] exceptional case[s] [of an extraschedular disability rating] is a finding . . . that application of the regular schedular standards is impractical because the disability is so exceptional or unusual due to such related factors as marked interference with employment or frequent periods of hospitalization."); *Ostborg*, 610 Fed. Appx. at 910, n.2 ("The schedular requirements are (1) a single disability ratable at 60% or more, or (2) two or more disabilities combining to 70% with at least one ratable at 40%.").

The Court of Appeals began its review of the ALJ's decision by reiterating the rule established in *Rodriguez and Brady*, stating: "A VA rating, while not binding on the SSA, 'is evidence that should be considered and is entitled to great weight.'" 610 Fed. Appx. at 914 (quoting *Brady*, 724 F.2d at 921). The Court of Appeals compared the disability standards for the Social Security Administration and the Veterans Administration, and noted that by statute, "the VA 'shall give the benefit of the doubt to the claimant,' whenever 'there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter.'" 610 Fed. Appx. at 914 (quoting 38 U.S.C. § 5107). As noted, as a matter of binding precedent, courts in this circuit must do the same when a claim for Social Security benefits is related to a combat injury. *DePaepe*, 464 F.2d at 101.

In affirming the ALJ's treatment of the VA disability rating for Mr. Ostborg, the Court of Appeals distinguished Mr. Ostborg's VA rating from the ratings in *Rodriguez* and *Brady*. The Court explained:

> in contrast to the claimants in *Brady* and *Rodriguez*, Ostborg was not given a 100% disability rating from the VA; instead, his maladies fell short of meeting the VA's schedular requirements for disability, but he was given a permanent and total disability rating based on extraschedular factors. *See id.; Rodriguez*, 640 F.2d at 686. Moreover, the VA's rating decision in Ostborg's case, provides scant explanation for applying those extraschedular factors to reach a determination of total disability, when the schedular factors do not meet the VA's disability criteria.

610 Fed. Appx. at 914-15. The Court of Appeals also pointed out that much of the medical evidence on which the VA rating rested was not before the ALJ. 610 Fed. Appx. at 915.

In *Pearson*, the VA determined that the claimant was "totally disabled due to a bipolar disorder, low back pain, and hypertension." *Pearson*, 271 Fed. Appx. at 980-81. The *Pearson* decision does not indicate whether Mr. Pearson's mental or physical impairments were combat-related. Citing *Brady*, the Court of Appeals stated that the VA rating, though not binding, must be given great weight, but the Court also found that to qualify for Social Security benefits, the claimant's disability could not be a product of alcoholism. The Court of Appeals held that the ALJ properly determined that Mr. Pearson was disabled due to major depression and that substantial evidence supported the ALJ conclusion "that alcoholism was a contributing factor to [Mr.] Pearson's disability." 271 Fed. Appx. at 981 ("An applicant for Social Security benefits "shall not be considered to be disabled ... if alcoholism ... would be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C))."). The record in *Pearson* included testimony from a clinical psychologist who stated that Mr. Pearson's functioning noticeably improved when he was not under the influence of alcohol. *Pearson*, 271 Fed. Appx. at 981. On that record, the Court of

Appeals affirmed the ALJ's decision denying Mr. Pearson's claim for disability insurance benefits and supplemental security income.  271 Fed. Appx. at 981.

Under binding and persuasive authority in this circuit, the ALJ erred in giving "little weight" Ms. Little's 70% VA rating.  Ms. Little suffers from PTSD related to her service in the Gulf War.  Her 70% disability rating is based on a diagnosis of chronic PTSD.  The symptoms that Dr. Clark described in her evaluation of Ms. Little are typical of the symptoms of combat veterans.  Ms. Little reported having one friend, and she was dating her friend's cousin (who she married in June 2012 and divorced in late 2013).  Ms. Little stated that she did not like to be in public, and she avoided people.  Dr. Clark reported that Ms. Little was involved in a traumatic event in combat; that Ms. Little responded with intense fear; that Ms. Little was having recurrent, distressing memories and dreams of the event, and she tried to avoid discussion of the event or situations that reminded her of the event;[8] that Ms. Little was feeling detached from other people, and that she had a markedly diminished interest in life's activities.  Ms. Little was having difficulty sleeping; she was irritable; and she was hypervigilant.  (Doc. 6-9, p. 68); *see generally* https://www.ptsd.va.gov/understand_tx/tx_basics.asp (last visited Mar. 23, 2019).

---

[8] VA records corroborate this finding.  As the ALJ acknowledged, in 2011, when Ms. Little was invited to participate in a survey, she contacted the VA to seek advice because she was concerned that she might have to discuss her combat experiences if she participated in the survey.  (Doc. 5-11, p. 19; Doc. 5-8, p. 97).

Dr. Clark recognized that Ms. Little had stopped participating in mental health treatment for a few years following her return from the war, but Dr. Clark did not indicate that the absence of treatment correlated to a reduction in PTSD symptoms. Dr. Clark explained that Ms. Little stopped receiving mental health treatment because she expected her symptoms to subside over time. Ms. Little was frustrated and depressed because time had not brought relief.[9]

Records from Dr. Huggins, Ms. Little's treating VA psychiatrist, support Dr. Clark's evaluation of Ms. Little. The ALJ gave Dr. Huggins's opinion "limited value." (Doc. 5-11, p. 16). Dr. Huggins's records include the following: (Doc. 5-9, p. 74) (treatment record dated May 16, 2012, in which Ms. Little indicated that "there were more blasts than she knew about. Apparently, she lost consciousness."); (Doc. 5-9, p. 74) ("She has had difficulty with mood swings, irritability, anxiety, low frustration tolerance, and problems in relationships . . . ."); (Doc. 5-9, p. 51) (treatment record dated July 17, 2012, indicating that Ms. Little "stopped taking the medication because she could not tell any difference. She has social anxiety and is depressed in terms of her affect."); (Doc. 5-9, p. 51) (Dr. Huggins gave Ms. Little "a trial of Paxil at a low dose to help with mood swings

_____

[9] The Court observes that lack of consistent participation in treatment by a combat veteran experiencing combat-related PTSD is not unusual and should not be equated with lack of treatment in other scenarios. Veterans are trained to control their reactions to the significant stresses that accompany military service in a war zone. They often view their inability to control their PTSD symptoms as personal shortcomings, and they often view treatment as a sign of personal weakness. Ms. Little's conduct is consistent with these characteristics of combat veterans.

and anxiety" and stated that "[s]he will continue in therapy with Dr. Peralme."); (Doc. 5-9, p. 25) (treatment record dated Aug. 2, 2012) (Ms. Little reported that she was "too relaxed" on Paxil and wanted to consider changing to Effexor; Dr. Huggins advised Ms. Little to stay on Paxil and "continue in therapy with Dr. Peralme."); (Doc. 5-20, pp. 13-14) (telephone record dated Nov. 1, 2012) (Ms. Little contacted clinic "for anxiety medication for a 16 hour plane ride."); (Doc. 5-20, pp. 13-14) (treatment record dated Apr. 3, 2013) (Ms. Little to "resume Wellbutrin to help with mood swings and anxiety"); (Doc. 5-19, pp. 84-85) (treatment record dated June 27, 2013) (Ms. Little stated "I'm okay[;]" plan to taper Wellbutrin); (Doc. 5-19, pp. 68-69) (treatment record dated Oct. 29, 2013) (Ms. Little reported to Dr. Huggins that she was getting divorced and "want[ed] to return to Lamictal as a mood stabilizer." Dr. Huggins increased Ms. Little's Wellbutrin to 400 mg daily.).

Unlike *Ostborg*, the VA 70% disability rating in this case is not a presumption but instead is a medically-grounded determination substantiated by VA treatment records. Unlike *Pearson*, there are no statutory or administrative limits on Ms. Little's ability to receive Social Security benefits. Accordingly, while the VA disability rating is not binding on the ALJ, the ALJ must give the 70% disability rating great weight and close scrutiny. *Rodriguez*, 640 F.2d at 686.

The ALJ discounted the VA disability rating because he discounted the medical evidence on which the rating rests. The Court finds that the ALJ's decision to give Dr. Clark's and Dr. Huggins's evaluations little weight is not supported by substantial evidence. The ALJ seems to have discounted these evaluations largely because the ALJ found the assessments inconsistent with Ms. Little's activities of daily living and because Dr. Clark based her assessment on Ms. Little's subjective reports of her activities. The ALJ stated that Ms. Little lived by herself, that she was able to carry out her daily responsibilities unassisted, that she cared for her young child unassisted, and that she travelled with her child to visit her grandparents. (Doc. 5-11, p. 26). But these are the very facts on which Dr. Clark's evaluation of Ms. Little rests, and records from Dr. Clark and Dr. Huggins reveal details that the ALJ omitted. Dr. Clark found that Ms. Little isolated herself from people other than her immediate family, and Ms. Little's inability to interact with people outside of her immediate family was indicative of chronic PTSD. Dr. Clark reported that at the time of her evaluation, Ms. Little lived with her daughter in a trailer next door to her paternal grandfather. (Doc. 5-9, p. 66). And Dr. Huggins's treatment records indicate that Ms. Little sought anxiety medication in advance of her trip to visit her grandparents. The individuals who diagnose and treat combat veterans for PTSD are experts acquainted with the unique experiences of those veterans. Just as an ALJ must give great weight to a

VA disability rating, an ALJ also should give great weight to those charged with evaluating and treating veterans suffering from combat-related injuries when the factual basis for those expert's opinions is consistent with the facts that the ALJ finds. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (An ALJ may not "substitute his judgment of the claimant's condition for that of the medical and vocational experts."). Per *DePaepe*, due weight must be given to the unique circumstances of veterans with combat injuries, and doubts concerning disability must be resolved in favor of the veteran when the impairments claimed as a basis for disability arise from those combat injuries.

The Court notes that Dr. Clark explained that with ongoing mental health treatment, Ms. Little may improve. Dr. Clark recommended that Ms. Little be reevaluated in the future.

## V. CONCLUSION

The Court remands the decision of the Commissioner for further administrative proceedings consistent with this memorandum opinion.

**DONE** this 25th day of March, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE